# Exhibit 3

## TRADER/KEY EMPLOYEE FORM (NEW EMPLOYEE)

### RESTRICTIVE COVENANT AND EMPLOYEE WORK MADE FOR HIRE AGREEMENT

As a condition to, and in consideration of, the future or continued employment by and compensation from Eagle Seven LLC, an Illinois limited liability company (the "**Company**"), to, Emilio Valentine ("**Employee**"), and for other good and valuable consideration, the Company and Employee enter into this **RESTRICTIVE COVENANT AND EMPLOYEE WORK MADE FOR HIRE AGREEMENT** (this "**Agreement**"), dated as of February 3, 2011.

1. Work.

    1.1 Work. "**Work**" means any and all materials, information and data, including all inventions, discoveries, improvements, trade secrets, original works of authorship, algorithms, computer programs (including source code and object code), trading, investment, quantitative and other strategies, methodologies and techniques, risk management models, all documentation relating to the foregoing, and all intellectual property therein, whether or not patentable or registrable under copyright or similar laws, which Employee, alone or jointly creates, conceives, develops, reduces to practice, or causes another to create, conceive, develop or reduce to practice. Notwithstanding anything in this Agreement to the contrary, the definition of "Work" does not include, and this Agreement does not apply to, any invention developed by Employee (i) entirely on his or her own time and (ii) without the use of any equipment, supplies, facilities or trade secret information of the Company, unless such invention (x) relates to the Company's business or its actual or demonstrably anticipated research or development or (y) results from any work performed by Employee for the Company or any of its affiliates.

    1.2 Work Made for Hire and Assignment. Employee understands and hereby agrees that, to the extent permitted by law, the Work shall be deemed a "work made for hire" within the meaning of that term under United States Copyright Act, 17 U.S.C. §§ 101 et seq., as amended or superseded. Employee hereby assigns and transfers to the Company, effective with respect to each item of Work as of the date of its creation, any and all rights, title and interest Employee may have or may acquire in and to the Work (including any Work not deemed, for whatever reason, to have been created as a work made for hire), in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised, including any and all intellectual property rights in the Work, and the right to prosecute and recover damages for all past, present and future infringements or other violations of the Work.

    1.3 Use of the Work. The Company shall have the unrestricted right to use, display, publish, perform, record, copy, broadcast, transmit, distribute, augment, subtract from, modify, distort, translate, transfer, combine with other information or materials, create derivative works based on, sell, or otherwise exploit for any purpose, the Work and any portion thereof, in any manner or media throughout the world, as the Company may in its sole discretion determine. Employee hereby irrevocably waives and assigns to the Company any and all so-called moral rights or "droit moral" Employee may have in or with respect to any Work. Notwithstanding the foregoing, nothing contained herein will require the Company to exercise or exploit any of the Company's rights in or to the Work.

    1.4 Delivery. Upon the termination of Employee's relationship with the Company for any reason, and/or upon the Company's request, Employee shall promptly (i) disclose to the Company all Work, (ii) deliver to the Company all records, notes, sketches, drawings,

diagrams, prototypes, memoranda, discs, tapes, DVDs, CD-ROMs, source code, and any other documentation or other tangible materials or media in Employee's possession or control that in any way embody, comprise, incorporate, or reflect the Confidential Information or any Work, including all copies thereof, and any other Company property then in Employee's possession or control (collectively, the "**Records and Property**"), and (iii) certify in writing to the Company that Employee has fully complied with the foregoing. In addition, Employee represents and warrants to the Company that he or she has (x) disclosed to the Company all Work created or developed as of the date hereof and (y) delivered to the Company all Records and Property.

1.5 Further Documentation. Upon the Company's request, Employee shall promptly execute and deliver to the Company any and all further assignments, patent applications, or such other documents as the Company may deem necessary to effectuate the purposes of this Agreement and to vest in the Company any of the Company's rights in the Confidential Information and/or any Work. Employee hereby appoints the Company as his or her attorney-in-fact with full power to execute, acknowledge, deliver and record any and all such documents Employee fails to execute within five (5) business days after the Company's request therefor. This appointment shall be a power coupled with an interest.

2. **Non-Disclosure and Use of Confidential Information**.

2.1 Definition. During the course of employment with the Company, Employee will have access to (i) trade secrets and other non-public information relating to the Company or its affiliates, which may include, but not be limited to: trading or investment strategies, methodologies and results; trading or investment systems; investment or investment instrument positions of the Company or its affiliates; risk management models; revenue models; quantitative and other strategies and methodologies, procedures and techniques; business plans and strategies, pricing and other financial information; lists of investors, clients, vendors and suppliers of the Company or its affiliates; any confidential information of any such investors, clients, vendors or suppliers; the source code and any non-public information or data comprising or related to the Work; and other proprietary technologies and processes and other proprietary information used by the Company or its affiliates in connection with their respective businesses and/or which the Company or any of its affiliates is obligated to any third party to maintain as confidential, and (ii) any information concerning the Company's or its affiliates' investment or trading performance, including the profits and losses therefrom, return on investment and other performance or "track record" information (collectively, the "**Confidential Information**"). Employee acknowledges that the Confidential Information is vital, sensitive, confidential and proprietary to the Company and/or its affiliates. Notwithstanding the generality of the foregoing, clause (i) of the definition of "Confidential Information" does not include any information, materials, or data that: (x) becomes rightfully known to Employee other than as a result of his or her employment with the Company or any affiliate of the Company; or (y) is or becomes generally available to the public other than as a result of Employee's unauthorized direct or indirect acts.

2.2 Non-Disclosure and Use. During and after Employee's employment with the Company, Employee shall (i) hold the Confidential Information in the strictest confidence and take all reasonable precautions to prevent the inadvertent disclosure of Confidential Information to any unauthorized individual or entity; and (ii) not disclose or otherwise use the Confidential Information in any manner or medium whatsoever, except as

required to perform Employee's duties for the Company or with the Company's prior written consent.

2.3 Ownership. As between the Company and Employee, the Company is and shall remain the exclusive owner of all rights, title, and interest in and to the Confidential Information.

3. **Warranty**.

   3.1 Prior Obligations. Except as otherwise disclosed to the Company in writing, Employee hereby represents and warrants that Employee is not bound by any agreement or obligation that directly or indirectly: (i) restricts Employee from competing with, or soliciting actual or potential clients, investors or business from, any person or entity; (ii) restricts Employee from soliciting any current or former employees of any person or entity; (iii) limits Employee's ability to perform assigned duties for the Company; or (iv) prohibits, restricts, limits, would be breached by, or otherwise would be in conflict with, Employee's employment with the Company and performance of his or her duties in connection therewith. Employee further represents and warrants that Employee has not improperly removed, copied, reproduced or maintained (in paper or electronic form) any confidential or proprietary information of any prior employer.

   3.2 Work. Employee hereby represents and warrants that (i) Employee has the right to enter into this Agreement; (ii) Employee has not previously granted, pledged or made any other disposition to any individual, enterprise or entity of any right, title or interest in or to the Work and shall not make any such disposition to any individual, enterprise or entity other than the Company; (iii) the Work (excluding any materials submitted by the Company to Employee) is and will be an original creation by Employee and does not and will not improperly use or disclose any trade secrets or confidential information or other property of any former employer of Employee or of any other third party; and (iv) neither the Work nor the production, exploitation and/or use by the Company of the Work or any portion thereof (excluding any materials submitted by the Company to Employee), in any manner or media throughout the world, will, to Employee's knowledge, in any way infringe or otherwise violate any intellectual property, privacy or other right of any individual, enterprise or entity.

4. **Restrictive Covenants**. Employee acknowledges that (A) the Business (as defined below) is highly competitive and the services to be performed by Employee for the Company and its affiliates are unique and global in nature, (B) the restrictions contained in this **Section 4** are essential to protect the Company and its affiliates and the goodwill of the Business, (C) the Company and its affiliates take significant steps to preserve and protect their respective businesses and competitive advantage, (D) any loss or erosion of the Company's and its affiliates' competitive advantage through the disruption of their respective relationships with Covered Employees and Business Partners would have severe repercussions on the Company's and its affiliates' respective businesses, (E) with respect to the Company's Confidential Information: (1) each and every component of the Confidential Information has been developed by the Company and its affiliates at significant effort and expense and is sufficiently secret to derive economic value from not being generally known to others; (2) each and every component of the Confidential Information constitutes a valuable trade secret of the Company and its affiliates; and (3) the protection and preservation of such Confidential Information provides the Company and its affiliates with a competitive advantage in the market in which they compete and has played, and will continue to play, a critical role in the Company's and its affiliates' financial success, (F) Employee has knowingly and voluntarily signed this Agreement after determining that the

3

provisions contained herein are of a material benefit to Employee, and that the duties and obligations imposed on Employee are fair and reasonable and will not prevent him from earning a livelihood following the Termination Date and (G) in light of the work duties and other responsibilities of Employee and his routine use of Confidential Information in performing such work duties and responsibilities, any Competitive Activities performed by Employee would inevitably result in the use and disclosure of such Confidential Information in performing such Competitive Activities. Employee further recognizes and accepts the individual responsibility that he has in the effort to protect and to preserve the Company's business and competitive advantage.

4.1   **Non-Solicitation; Non-Interference**. Subject to **Section 4.4**, Employee agrees that for so long as Employee remains employed by the Company and for a period of 12 months following the effective date of termination of Employee's employment with the Company (such effective date, the "**Termination Date**" and such period, the "**Non-Solicitation Restricted Period**"), Employee shall not, except in furtherance of his or her legitimate duties on behalf of the Company or its affiliates, directly or indirectly, alone or in combination with any other individual, enterprise or entity, engage in any of the following:

   (a)   solicit, employ or engage in any capacity (whether as an employee, consultant, owner, member, independent contractor or otherwise) any "Covered Employee." A "**Covered Employee**" means any individual who is or was, within the six-month period prior to such solicitation, employment, or engagement, employed or otherwise engaged by the Company or any of its affiliates in any capacity (whether as an employee, consultant, owner, member, independent contractor or otherwise);

   (b)   solicit, conduct business with, or perform services for, any of the Company's Clients or Business Partners. A "**Client or Business Partner**" means any individual, enterprise or entity that is or was, within the six-month period prior to such solicitation, conduct of business or engagement, a client, investor, strategic partner, joint venturer or similar business partner of the Company or any of its affiliates; provided, however, that nothing herein shall prohibit Employee from soliciting business or performing services of a type not performed or provided by the Company or any of its affiliates during his or her employment with the Company; or

   (c)   interfere with, alter, or attempt to interfere with or alter, any relationship between the Company or any of its affiliates and any individual, enterprise or entity referred to in **Sections 4.1(a)** and **4.1(b)** above.

4.2   **Non-Competition**. Subject to the last paragraph of this **Section 4.2** and **Section 4.4**, Employee agrees that during the period beginning on the date hereof and ending on the 10 month anniversary of Employee's Termination Date (such period, the "**Non-Competition Restricted Period**"), Employee shall not, directly or indirectly, alone or in combination with any other individual, enterprise or entity (other than the Company or any of its affiliates), engage in any of the following activities ((i) and (ii) below being the "**Competitive Activities**"):

   (i)   engage in the Business (as defined below); or

   (ii)  render services to or with, or otherwise assist, any individual, enterprise or entity that engages in, or plans to engage in, the Business (a "**Competitive Entity**"), or

4

otherwise enter into a business relationship with or own, operate or manage a Competitive Entity or perform any services or otherwise assist any Competitive Entity in anticipation of engaging in any of the foregoing; provided, however, that nothing herein shall prohibit Employee from (x) rendering services to a Competitive Entity that are unrelated to the Business or (y) passively owning less than one percent (1%) of the publicly traded shares of any entity.

In the event Employee proposes to engage in a Competitive Activity directly with a Covered Employee, or render services to a Competitive Entity that engages (whether as an employee, independent contractor, consultant, owner or otherwise) any Covered Employee (excluding administrative and clerical employees) in the Business, then the Non-Competition Restricted Period shall be deemed to end on the 12-month anniversary of the Termination Date with respect to such Competitive Activity.

For purposes hereof, the "**Business**" shall mean (i) engaging in the business of acquiring, disposing of, spreading, arbitraging and otherwise trading, whether long or short or directly or indirectly in any security, commodity, futures contract, security futures contract, forward contract, foreign exchange commitment, swap contract, exchange-for-physical, or spot (cash) commodity, option, warrant or other right on or pertaining to any of the foregoing or any other financial product or financial instrument employing a trading strategy similar to any trading strategy employed or actively planned to be employed by the Company or any of its affiliates during the period in which Employee was employed by the Company, (ii) the creation, development, implementation, distribution, ownership or exploitation of intellectual property and/or technology (including, but not limited to, trading infrastructure, databases, trading strategies, algorithms and software) for use in connection with trading or other activities related to any trading strategy similar to any trading strategy employed or actively planned to be employed by the Company or any of its affiliates during the period in which Employee was employed by the Company, and (iii) any other business activity that the Company or any of its affiliates engaged in, or actively planned to engage in, during the period in which Employee was employed by the Company.

4.3  **Non-Disparagement**. During the term of Employee's employment with the Company and at all times thereafter, Employee shall not make any oral or written statement or other communication that disparages or places the Company or its affiliates or its or their respective principals, officers, directors, employees, investors, partners, managers, members, investors, products or services in a false or negative light; provided, however, that nothing herein shall preclude Employee from testifying as required by lawful subpoena or other legal process, making good faith reports to governing regulatory bodies or authorities, or communicating inside the Company consistent with legitimate business needs.

4.4  **Extension of Restricted Periods**. If Employee engages in an activity prohibited by **Section 4.1** or **Section 4.2**, then (i) the Non-Solicitation Restricted Period shall be automatically extended for a period of twelve (12) months from the last date of engagement in such activity (in the case of an activity prohibited by **Section 4.1**) or (ii) the Non-Competition Restricted Period shall be automatically extended for a period of ten (10) or twelve (12) months, as the case may be under **Section 4.2** hereof, from the last date of engagement in such activity (in the case of an activity prohibited by **Section 4.2**).

5. **Disclosure of Existence of Restrictive Covenants.** Employee acknowledges and agrees that the covenants set forth in **Sections 2** and **4** (collectively, the "**Restrictive Covenants**") are reasonable and necessary for the protection of the business of the Company and its affiliates and their respective intellectual property and technology-related assets. Accordingly, prior to becoming employed or engaged by, or otherwise providing services to, any individual or entity engaged in the financial markets, Employee shall (i) disclose the existence and the terms of the Restrictive Covenants and the prohibition on Employee's disclosure and use of the Work and Confidential Information set forth herein to any future employer or other individual, enterprise or entity to which Employee may provide services, and (ii) at least five (5) business days prior to commencing any such new employment or engagement, notify the Company of the identity of Employee's employer or other individual or entity to which Employee may provide services and supply a general description of Employee's new job and duties. Employee further acknowledges and agrees that, given the worldwide nature of the Business, the scope of the Restrictive Covenants is not limited to any specific geographic territory.

6. **Indemnification.** Employee shall reimburse and indemnify the Company, and hold the Company harmless against, any and all actions, damages, losses, expenses, claims, demands, costs and liabilities (including reasonable attorneys' fees and court costs), incurred by the Company in connection with or arising out of (i) Employee's breach of any of his or her obligations, representations or warranties set forth herein, or other violations of this Agreement; (ii) any claim by a third party that the Work or any portion thereof infringes or otherwise violates any intellectual property, privacy or other right of such party; or (iii) any claim by any of Employee's prior employers or by any other third party arising out of Employee's prior employment or engagement, including any claim related to a breach or violation by Employee of any restrictive covenant to which Employee was or is subject.

7. **Remedies.** Employee acknowledges that the covenants in this Agreement are reasonable and necessary for the protection of the Company's business interests, that irreparable injury will result to the Company and its affiliates if Employee breaches any of the terms of this Agreement, and that in the event of Employee's actual or threatened breach hereof, the Company will not have an adequate remedy at law. Employee accordingly agrees that, in the event of any actual or threatened breach of any provision of this Agreement, the Company shall be entitled to injunctive and other equitable relief (without the necessity of showing actual monetary damages or of posting any bond or other security) (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach, as well as any other remedies available to the Company, including monetary damages. Employee acknowledges that the remedy afforded the Company pursuant to this **Section 7** is not exclusive, and such remedy shall not preclude the Company from seeking or receiving any other relief.

8. **Severability and Modification.** If any clause, term or provision of this Agreement, or the application thereof to any individual, enterprise, entity or circumstance, shall to any extent be deemed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement and the application of such clause, term or provision to individuals, enterprises, entities or circumstances other than those in respect of which it is invalid and unenforceable, shall not be affected thereby, and shall be valid and be enforced to the fullest extent permitted by law. If any court of competent jurisdiction shall deem any provision of this Agreement too restrictive, the other provisions shall stand, and the court shall modify the provision at issue to the point of greatest restriction permissible by law.

9. **Governing Law; Consent to Jurisdiction; Waiver of Jury Trial.** All questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the law of the State of Illinois. Employee hereby agrees that (a) any and all litigation arising out of this Agreement shall be conducted only in courts located in Chicago, Illinois and (b) such courts shall have the exclusive jurisdiction to hear and decide such matters; provided, however, that an action brought by the Company for preliminary injunctive relief under **Sections 2 or 4** of this Agreement may be brought in any court that has personal jurisdiction over Employee. Employee hereby submits to the personal jurisdiction of such courts and waives any objection Employee may now or hereafter have to venue or that such courts are inconvenient forums. Employee and the Company hereby (i) expressly waive any right to a trial by jury in any action or proceeding to enforce or defend any right, power or remedy under or in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and (ii) agree that any such action shall be tried before a court and not before a jury.

10. **At-Will Employment.** Nothing set forth in this Agreement alters Employee's status as an at-will employee of the Company, meaning that either the Company or Employee can end the employment relationship at any time, for any reason, with or without cause and with or without notice.

11. **Miscellaneous.** This Agreement supersedes any and all prior oral or written agreements between the parties, and constitutes the entire agreement between Employee and the Company, with respect to the subject matter hereof. No modification or amendment of this Agreement, or any waiver of any right, power, or privilege under this Agreement, will be binding upon either the Company or Employee unless set forth in a writing signed by the Company and Employee. No failure on the part of Employee or the Company to exercise, and no delay in exercising, any right, power or privilege hereunder operates as a waiver thereof; nor does any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. Employee may not assign this Agreement without the prior written consent of the Company. All rights granted to the Company under this Agreement shall extend also to the Company's assignees and successors in interest. All uses of the word "including" hereunder shall be construed to mean "including, but not limited to." This Agreement may be executed by the parties in two separate counterparts, and such counterparts so executed together shall constitute one agreement binding on both parties.

*Employee understands that executing and agreeing to be bound by this Agreement is a condition to and prerequisite of his or her employment with the Company. Employee acknowledges that he or she has had the opportunity to consider this Agreement and confer with anyone of his or her choice concerning this Agreement and that, by signing below, he or she acknowledges he or she is entering into this Agreement knowingly and voluntarily and intends to be bound by it.*

**(Remainder of this page intentionally left blank.
Signature page follows.)**

## TRADER/KEY EMPLOYEE FORM (NEW EMPLOYEE)

IN WITNESS WHEREOF, the Company and Employee have executed this Restrictive Covenant and Employee Work Made For Hire Agreement as of the date first set forth above.

**EMPLOYEE**	**EAGLE SEVEN LLC**

Signed: *Emilio Valentine* (signature)	Signed: _____

Name: Emilio Valentine	Name: Christopher Lorenzen

Address: [redacted]	Title: CEO